FILED
November 02, 2015
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 15-10097

United States Court of Appeals
Fifth Circuit
**FILED**
October 8, 2015
Lyle W. Cayce
Clerk

MARCELINO SALAZAR,

    Plaintiff–Appellant,

v.

CARGILL MEAT SOLUTIONS CORPORATION,

    Defendant–Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:13-CV-204

---

Before STEWART, Chief Judge, and BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:*

    Plaintiff–Appellant Marcelino Salazar alleges that his former employer, Defendant–Appellee Cargill Meat Solutions Corporation ("Cargill"), violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, when it terminated his employment. After more than twenty years at Cargill with no disciplinary history, Salazar was summarily dismissed for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 15-10097      Document: 00513253903     Page: 2     Date Filed: 10/30/2015
Case 5:13-cv-00204-C   Document 28   Filed 11/02/15   Page 2 of 8   PageID 276

No. 15-10097

insubordination when he shrugged his shoulders to respond in the negative to a routine question from a supervisor. According to Salazar, he was unable to form a vocal response because his mouth was full of coffee, and nothing in his considerable experience at Cargill indicated that such nonverbal communication amounted to insubordination meriting immediate dismissal. Additionally, a new, significantly younger employee appeared at Cargill on the day of Salazar's termination and took over Salazar's responsibilities. The district court granted summary judgment to Cargill, finding that Salazar had failed to present competent evidence that the company's proffered reason for terminating him was a pretext for age discrimination. We disagree and reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Salazar worked at Cargill's cattle feedlot in Lockney, Texas from the mid-1980s until his termination in 2012. At the time of his termination, Salazar was fifty-six years old and held the position of feeder-truck driver in Cargill's Feed Department—a position he had held since at least 2007 without a single disciplinary incident. As a feeder-truck driver, Salazar delivered cattle feed from Cargill's mill to its feed bunk. He also maintained his feeder truck, performing minor repairs and reporting on the vehicle's condition to his superior so that the company could arrange for substantial repairs when necessary.

In June 2012, Salazar's supervisor in the Feed Department, Mike Tonche, was replaced by interim supervisor Filiberto Polanco. Polanco also served as the supervisor of Cargill's Mill Department. In these dual roles, Polanco had the authority to discipline Cargill staff. Both Tonche and Polanco reported to Feedlot Area Manager Pat O'Connell.

Tonche, then Polanco, held regular morning meetings with the Feed Department staff. In these meetings, the supervisor would ask the feeder-truck drivers how they were doing and whether they had encountered any problems

Case: 15-10097     Document: 00513253903     Page: 3     Date Filed: 10/30/2015
Case 5:13-cv-00204-C   Document 28   Filed 11/02/15   Page 3 of 8   PageID 277

No. 15-10097

with their feeder trucks or with the cattle. Cargill management viewed the upkeep of the feeder trucks as "absolutely critical," as each truck cost approximately $200,000.

On June 25, 2012, Polanco held a Feed Department morning meeting. Salazar attended this meeting alongside several of his colleagues in the Feed Department, as well as two new Cargill employees, 19-year-old Stephen Gonzales and 29-year-old Justin Davis. According to Polanco, Gonzales and Davis had been hired to work in the Mill Department, but Gonzales was expected to drive a feeder truck "on occasion" to cover Tonche's former shifts. During the meeting, Polanco asked each of the feeder-truck drivers whether they were having any problems with their vehicles. When Polanco posed the question to Salazar, Salazar "was taking a drink of coffee and was not able to answer out loud, so [he] shrugged [his] shoulders as a way of indicating 'no' to the question." Polanco "viewed [Salazar's] refusal [to answer the question] as insubordinate, and terminated [Salazar]" on the spot.

During his twenty-plus years with Cargill, Salazar "ha[d] never seen or been told about any [company] rule or policy . . . that employees could not answer questions by nodding or shaking their heads, or by shrugging their shoulders." In Salazar's experience, "it was permissible to answer [Polanco's] question in the manner that [he] did," as he and other employees had "often responded to questions" nonverbally without repercussions. Additionally, Salazar was discharged with no prior notice, despite a provision in Cargill's disciplinary policy mandating a warning or formal write-up before termination, absent "serious" circumstances. In fact, this was Salazar's first and only disciplinary action of any sort at Cargill.

Following Salazar's dismissal, Gonzales—who was thirty-seven years Salazar's junior and had no experience operating a feeder truck—assumed

Salazar's work duties. Polanco informed O'Connell of Salazar's termination, and O'Connell "did not disagree with [Polanco's] decision."

In September 2013, following receipt of a right-to-sue letter from the Equal Employment Opportunity Commission, Salazar sued Cargill in federal court, asserting that his termination violated the ADEA. The district court granted summary judgment for Cargill. The court concluded that although Salazar had made out a prima facie case of age discrimination, Cargill had articulated a non-discriminatory reason for its action—namely, Salazar's insubordination at the June 25 meeting—and Salazar had failed to raise a genuine factual dispute as to whether Cargill's stated explanation was a mere pretext for discrimination. Salazar timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over Salazar's ADEA claim pursuant to 28 U.S.C. § 1331. This Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

"We review the grant of summary judgment de novo, applying the same standard as the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Like the district court, we construe all facts and evidence in the light most favorable to the nonmovant, and we refrain from making credibility determinations or weighing the evidence. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

4

Case: 15-10097      Document: 00513253903      Page: 5      Date Filed: 10/30/2015
Case 5:13-cv-00204-C   Document 28   Filed 11/02/15   Page 5 of 8   PageID 279

No. 15-10097

## III. DISCUSSION

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against [him] . . . because of [his] age." 29 U.S.C. § 623(a)(1). To establish a claim of age discrimination, "the plaintiff has the burden of persuasion to show 'that age was the 'but-for' cause of [his] employer's adverse action.'" *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). Where, as here, the plaintiff relies on circumstantial evidence of discrimination, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), guides the court's analysis. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

The plaintiff must first make out a prima facie case of discriminatory treatment, which, in this context, entails a showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson*, 602 F.3d at 378 (internal quotation marks omitted). Once the plaintiff sets forth his prima facie case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the employer satisfies this obligation—characterized as a burden of production, not one of persuasion, *Sandstad*, 309 F.3d at 897—the plaintiff is "afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual," *Moss*, 610 F.3d at 922.

In assessing whether the plaintiff's rebuttal defeats summary judgment, "the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether [the employer's expressed] reason was pretextual." *Id.* (alterations and internal quotation marks omitted). "A plaintiff may show

pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (internal quotation marks omitted). "Evidence demonstrating the falsity of the defendant's explanation, taken together with the [plaintiff's] prima facie case, is likely to support an inference of discrimination even without further evidence of [the] defendant's true motive." *Sandstad*, 309 F.3d at 897. Correspondingly, "the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Id.* Evidence supporting the plaintiff's prima facie case, and inferences drawn therefrom, properly may bear on the pretext inquiry. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981)).

The district court held that Salazar made out a prima facie case of age discrimination, and we agree. Salazar presented evidence that (1) he was discharged; (2) he was qualified for his position; (3) he was over forty years old; and (4) he was replaced by someone younger—19-year-old Stephen Gonzales.

Although Cargill contends that Salazar's evidence fails to establish the second and fourth elements of his prima facie case, its arguments are unavailing. This Court has held that "a plaintiff challenging his termination . . . can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988). "By this," we explained, "we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." *Id.* at 1506 n.3. We later held, as a corollary, that an ADEA plaintiff "need not show that his performance met [his

6

Case: 15-10097      Document: 00513253903      Page: 7      Date Filed: 10/30/2015
Case 5:13-cv-00204-C   Document 28   Filed 11/02/15   Page 7 of 8   PageID 281

No. 15-10097

employer's] expectations to establish a prima facie case"; evidence of employer dissatisfaction "does not prove a lack of qualifications at the prima facie stage." *Berquist*, 500 F.3d at 350–51. Cargill's suggestion that Salazar's alleged insubordination on June 25, 2012, rendered him unqualified for the feeder-truck-driver position ignores the evidence to the contrary, such as Salazar's unblemished performance record dating back to at least 2007, and cannot be reconciled with our reasoning in *Bienkowski* and *Berquist*.

As for Salazar's evidence of his replacement by a younger employee, Cargill contests the veracity of Salazar's statements in his deposition and affidavit that Gonzales took his place. But these averments were founded on Salazar's personal knowledge and observations. This competent evidence, contested by Cargill's arguments and competing evidence, therefore highlights the existence of a material factual dispute precluding summary judgment.

The district court also held, and we again agree, that Cargill carried its burden to introduce evidence that its decision to terminate Salazar had a legitimate, nondiscriminatory basis—Salazar's insubordination during the June 25, 2012, morning meeting.

The dispositive issue, therefore, is whether Salazar presented sufficient evidence to create a genuine dispute of material fact on pretext. The district court concluded that Salazar's evidence would not preclude summary judgment because, in essence, it only disputed Cargill's characterization of the events of June 25. "[T]he question here," it observed, "is not why Salazar did not answer Polanco's question, or whether insubordination is a good reason to fire someone, but whether Polanco truly fired Salazar because of his age"—an issue on which Salazar was "unable to produce any evidence."

This reasoning misapprehends Salazar's summary-judgment burden. Salazar needed only to present "[e]vidence demonstrating the falsity of [Cargill's] explanation," coupled with his prima facie case of age discrimination,

to withstand summary judgment. *Sandstad*, 309 F.3d at 897. The evidence before the district court, viewed in the light most favorable to Salazar, meets this threshold. In addition to the evidence supporting his prima facie case, Salazar produced sworn testimony that (1) he had worked for Cargill for more than twenty years without a single disciplinary incident; (2) the conduct for which he was terminated was routine and, in his experience, had never before been met with sanction; (3) he was dismissed summarily, without a warning or a write-up, contrary to Cargill's ordinary procedures; and (4) the day of his firing, two new, younger employees began work for Cargill, and one of those employees assumed his work duties. Regardless of whether Salazar ultimately will be able to carry his burden of persuasion on pretext, these sworn facts, and the favorable inferences drawn therefrom, tend to show the falsity of Cargill's non-discriminatory explanation at this early stage of the litigation. Accordingly, the district court erred in granting summary judgment to Cargill.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.